IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

· 2012 FEB 10 P 4: 09

CLERK _____
SO. DIST. OF GA.

EVELYN B. SMITH,            )
                           )
        Plaintiff,         )
                           )
    v.                     )        CV110-147
                           )
MICHAEL J. ASTRUE, Commissioner )
of Social Security Administration, )
                           )
        Defendant.         )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Evelyn B. Smith ("Plaintiff"), proceeding *pro se*, appeals the decision of the

Commissioner of Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social

Security Act. Upon consideration of the briefs submitted by both parties, the record evidence,

and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the

Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that

a final judgment be **ENTERED** in favor of the Commissioner.

## I.     BACKGROUND

Plaintiff applied for DIB and SSI on July 1, 2004, alleging a disability onset date of

February 28, 2001.[1] Tr. ("R."), pp. 241-44.[2] The Social Security Administration denied her

_____

[1]At the administrative hearing, Plaintiff amended her alleged onset date to January 1, 2004. Tr. ("R."), pp. 589-90.

[2]Plaintiff's application for SSI was unavailable for inclusion in the record. R. 3.

applications initially, R. 165, 178-79, and on reconsideration. R. 163, 172-75. Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"). R. 171. Represented by a

non-attorney representative,[3] Plaintiff appeared and testified on her own behalf at a hearing on

August 7, 2008. R. 587-625. The ALJ also heard testimony from Carroll H. Crawford, a

Vocational Examiner ("VE") at the hearing. R. 616-24. The ALJ then issued an unfavorable

decision dated September 4, 2008. R. 150-162.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the

ALJ found:

1.  The claimant has not engaged in substantial gainful activity since
    January 1, 2004, the alleged onset of disability (20 C.F.R.
    §§ 404.1520(b), 404.1571 et seq. and 416.920(b), 416.971 et seq.).

2.  The claimant has the following severe impairments: cervical
    spondylosis with left upper extremity radiculopathy, atrophy, and
    weakness; minor hand arthritis of the left DIP joints; and a history of
    substance abuse (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3.  The claimant does not have an impairment or combination of
    impairments that meets or medically equals one of the listed
    impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R.
    §§ 404.1520(d) and 416.920(d)).

4.  The claimant has the residual functional capacity to perform medium
    exertional work,[4] except that claimant is restricted to only occasionally
    crawling, handling, and fingering, and frequently feeling with the left

---

[3]The Court recognizes that because Plaintiff was represented by a non-attorney
representative at her administrative hearing that the ALJ was under a "special duty" to develop
a full and fair record. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981). However, as
neither party has raised the issue of whether the ALJ failed to develop a full and fair record, the
Court need not address this issue.

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting
or carrying of objects weighing up to 25 pounds. If someone can do medium work, we
determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c),
416.967(c).

upper extremity. Based on the claimant's RFC, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5.    Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as counter attendant, light and semi-skilled; stock clerk, light and semi-skilled; and house officer (indoor security), light and semi-skilled. Even if claimant had no transferable skills, claimant was able to perform jobs in the national economy such as mail clerk, light and unskilled; and office helper, light and unskilled. (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). Thus, the claimant was not under a disability, as defined in the Social Security Act, from January 1, 2004 through September 4, 2008. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 156-62.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 4-7. Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision.

Although Plaintiff has not cited any authority in her brief supporting her positions, contrary to the Court's instructions (doc. no. 12, pp. 1, 3), the Court has given a liberal construction to Plaintiff's *pro se* brief and concludes that Plaintiff is arguing that the ALJ (1) erred in his conclusion that Plaintiff's mental impairments are non-severe; (2) erred in his conclusion that Plaintiff's impairments – either singularly or in combination – did not meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1; (3) failed to properly evaluate Plaintiff's subjective complaints of pain and other symptoms, and (4) improperly used the VE at the administrative hearing. (See doc. no. 15 (hereinafter "Pl.'s Br.").) Plaintiff also attaches several documents to her brief, some of which are not a part of

the administrative record in this case. (See doc. no. 15-1, pp. 13-15.) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 24 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision

4

that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. New Evidence

As an initial matter, the Court addresses the new evidence attached to Plaintiff's brief. Although Plaintiff submitted several attachments that are cited in the record, she has also included several lists of "active" prescriptions that she asserts are current as of the time she submitted her brief. (Doc. no. 15-1, pp. 13-15.) Plaintiff discusses this evidence in support of her argument that the ALJ's RFC determination is not supported by substantial evidence and should therefore be remanded pursuant to "sentence four" of § 405(g). Pl.'s Br., p. 11. However, out of an abundance of caution, the Court will also construe the inclusion of the new evidence as Plaintiff's request that they be used to support a "sentence six" remand under § 405(g). For the reasons set forth below, consideration of this evidence is not permitted under sentence four and is not warranted under sentence six.

The Eleventh Circuit has explained that sentence four and sentence six of § 405(g) authorize two different types of remand. Sentence four empowers the Court to set aside the

5

Commissioner's final decision if it finds that the ALJ's decision is not supported by substantial evidence or that the ALJ committed a legal error. Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996). On the other hand, sentence six authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Id. (quoting 42 U.S.C. § 405(g)).

To the extent that Plaintiff seeks to rely upon the new evidence in support of her argument that the ALJ's decision is not supported by substantial evidence, consideration of such evidence for this purpose is plainly foreclosed under clearly established law. A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (per curiam) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the [AC] in support of her disability claim. These records are not part of the administrative record for review by this court . . . . Consequently, this court has no jurisdiction to evaluate this new evidence in the first instance.").

Here, Plaintiff has offered nothing to suggest that the new, non-record evidence

submitted with her brief is reviewable at this stage, and relevant law makes clear that the Court is without authority to review such evidence pursuant to sentence four to determine whether the Commissioner's decision is supported by substantial evidence. See Ingram, 496 F.3d at 1267.

Moreover, the Court does not find that the new evidence warrants a remand pursuant to sentence six because it is not "material" – "that is, relevant and probative so there is a reasonable probability that it would change the administrative result." Vega v. Commissioner of Social Sec., 265 F.3d 1214, 1218 (11th Cir. 2001); see 42 U.S.C. § 405(g). Plaintiff's new evidence simply provides, without elaboration, a list of medications that she is currently taking. (Doc. no. 15-1, pp. 13-15.) However, Plaintiff's currently prescribed medications say nothing about the time period under review – January 1, 2004 through September 4, 2008 – and thus there is no reasonable probability that such evidence would change the administrative result. Vega, 265 F.3d at 1218. Thus, the new evidence also does not merit remand pursuant to sentence six, and the Court will accordingly exclude such evidence from consideration.

### B. Severity of Plaintiff's Mental Impairments

Plaintiff first argues that the ALJ incorrectly determined that her ADHD and depression were non-severe impairments. Pl.'s Br., pp. 9-10. To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her mental impairments significantly affect her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (per curiam) (citing Brady, 724 F.2d 914). Under this test,

8

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Title 20, Code of Federal Regulations, Sections 404.1520a and 416.920a set forth a "special technique" to be followed in the analysis of mental impairments. The ALJ must first evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Next, the ALJ must rate the degree of functional limitation resulting from the mental impairment by considering four functional categories and rating the degree of functional limitation in each category.[5] Id. §§ 404.1520a(c), 416.920a(c). Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[6] Id. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate,"

---

[5]These four functional categories are known as the "paragraph B" criteria. R. 159.

[6]"*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

9

"marked," or "extreme." In rating the decompensation category, the ALJ classifies the limitation as "none," "one or two," "three," and "four or more." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id.

After rating the degree of functional limitation stemming from a mental impairment, the ALJ must then determine whether that impairment is severe. Id. §§ 404.1520a(d), 416.920a(d). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1). Only if the ALJ finds that the mental impairment is severe will he then be required to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). With these basic principles in mind, the Court turns to Plaintiff's argument.

In his decision, the ALJ noted that Plaintiff alleged disability due to ADHD, "bipolar disorder, anxiety, and depression." R. 156. However, the ALJ noted that a state agency psychological consultant assessed Plaintiff's alleged mental impairments as non-severe, finding that these impairments resulted in only "mild" functional limitations, and no episodes of decompensation. R. 159 (citing R. 336-48). Moreover, the ALJ noted that the evidence of record established that Plaintiff's ADHD was well-controlled when she was compliant with her medication. R. 156, 401, 405, 423, 465, 481; see R. 313-22. Additionally, the ALJ noted that Plaintiff had not made any ongoing complaints of depression, anxiety, or bipolar disorder symptoms, nor had she been treated regularly for any of these symptoms. R. 156.

Plaintiff argues that the ALJ incorrectly used records from the Veteran's Administration Medical Center ("VA") to find that her ADHD was controlled with medication and that she had no ongoing complaints of depression: this is so, Plaintiff argues, because she was limited to seeking treatment from the VA, which is able to fill her prescriptions for ADHD medication but "offers no type of outpatient psychiatric care." Pl.'s Br., pp. 9-10. Notably, Plaintiff points to no evidence in the record that would otherwise show that her mental impairments significantly limit her ability to do basic work activities.

The Court first addresses Plaintiff's argument relating to her ADHD. As the ALJ noted, the record indicates that Plaintiff's ADHD was well-controlled with medication. R. 156, 313-22, 401, 405, 465, 481. Although Plaintiff argues that she was limited to using the VA for filling her prescriptions, the Court notes that on several occasions, Plaintiff told Ananda Pathiraja, M.D., a staff psychiatrist at the VA, that her current dose of ADHD medication was working for her and that she was doing well in school. R. 465, 481. Moreover, the ALJ did not limit his review of Plaintiff's treatment history for ADHD solely to the VA progress notes. Rather, the ALJ looked to the entire record before concluding that the evidence demonstrated that her ADHD was well controlled on medication. R. 156. Given this evidence, it was reasonable for the ALJ to conclude that Plaintiff's symptoms of ADHD do not constitute a severe impairment. See Gibbs v. Barnhart, 130 F. App'x 426, 431 (11th Cir. 2005) (*per curiam*) (finding that substantial evidence supported finding that claimant's ADHD was not a severe impairment where ADHD symptoms were controlled with medication).

With regard to Plaintiff's various other alleged mental impairments, the ALJ found that the lack of evidence in the record regarding her alleged mental impairments did not support

11

a finding that Plaintiff suffered from depression, anxiety, or bipolar disorder symptoms, R. 156, a conclusion consistent with that of the state agency psychologist, R. 159 (citing R. 336-48). Although Plaintiff argues that the VA does not offer outpatient psychiatric care, the ALJ considered other evidence of Plaintiff's treatment history, including treatment notes from Augusta Area Psychiatric Associates, R. 313-25, and notes from Plaintiff's treating physician, Jay A. Tomeo, M.D., R. 405, 414, which similarly do not support a finding that Plaintiff's mental impairments were severe. Furthermore, Plaintiff has not pointed to any evidence in the record, and the Court is not aware of any, to support her argument that the ALJ erred in determining that her mental impairments were non-severe. The lack of evidence in the record showing a persistent, severe mental impairment is not due to any fault of the ALJ, and absent any showing that additional evidence was needed to render a decision based upon substantial evidence, the Court will not penalize the Commissioner for Plaintiff's failure to produce relevant evidence. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim.") (citations and quotations omitted). Thus, the ALJ's determination that Plaintiff's ADHD and other alleged mental impairments were not severe is supported by substantial evidence and should be affirmed.

### C. Consideration of Impairments, Singularly or in Combination

Plaintiff also argues that the ALJ erred by not finding that Plaintiff's impairments or combination of impairments met or medically equaled a Listing in Appendix 1, Subpart P. Pl.'s Br., pp. 2-3, 8. Plaintiff, however, does not suggest which of the Appendix 1 Listings

would be met or equaled by her impairments or combination of impairments. Nor does Plaintiff point to evidence in the record to support her contention that any of her impairments – either singularly or in combination -- met or medically equaled a Listing. However, as the Commissioner correctly notes, Comm'r's Br., p. 14, Plaintiff bears the burden to show that her impairments meet or equal a listed impairment. Barron, 924 F.2d at 229. Indeed, as the Eleventh Circuit has recognized:

> [w]hen a claimant contends that [she] has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, [she] contends that [she] has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency.

Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam); Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986) (per curiam).

In addition, there is no requirement that an ALJ "mechanically recite the evidence" leading to his step three determination, and an ALJ may make an implied finding that a claimant's impairments did not meet or medically equal the Listings. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing Edwards v. Heckler, 736 F.2d 625, 629 (11th Cir. 1984)). As Plaintiff has not made any specific arguments with regard to the ALJ's step three determination, the Court must assess whether the ALJ's determination at that step is supported by substantial evidence. As set forth below, the Court finds that the ALJ's conclusion was so supported.

According to Plaintiff, the ALJ erred by failing to conclude that her individual impairments meet or medically equal the Listings. See Pl.'s Br., pp. 2-3, 8. However, as the Commissioner points out, Comm'r's Br., pp. 13-14, and as explained in greater detail *infra*,

13

the ALJ assessment of Plaintiff's RFC is supported by substantial evidence, permitting the ALJ to make an implied finding that Plaintiff's impairments do not met or equal the Listings. Specifically, the ALJ acknowledged and discussed Plaintiff's left-side weakness of the upper extremity, headaches, rheumatoid arthritis, depression, anxiety, ADHD, bipolar disorder, inability to sit or stand more than five minutes due to swelling in her legs, and inability to type with her left hand due to weakness. R. 157-60. In particular, the ALJ noted that a state agency physician assessed Plaintiff with the RFC "for medium work with restrictions [of] only occasionally crawling, occasionally handling or fingering, and frequently feeling." R. 159 (citing R.368-75). Furthermore, as noted above, the ALJ's determination that Plaintiff's mental impairments were not severe is supported by substantial evidence; having made this determination, there was accordingly no need for the ALJ to consider whether any of those mental impairments met or equaled the Listings. See 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

In short, the ALJ's consideration of the state agency consultants' opinions is probative evidence that medical equivalence has been considered, Social Security Ruling ("SSR") 96-6p, and support an implied finding that Plaintiff's impairments did not meet or medically equal a Listed impairment. Hutchison, 787 F.2d at 1463. Moreover, even if the Court did find error in the ALJ's treatment of the step three evaluation, Plaintiff, in neglecting to indicate which Listings she would have met, has not supported her allegation of error with specific facts that show prejudice from the ALJ's alleged error.

To the extent that Plaintiff generally argues that the ALJ did not consider the combined effects of Plaintiff's impairments (Pl.'s Br., p. 8), that argument must also fail. Upon review of Plaintiff's impairments, the ALJ concluded, "The claimant does not have an impairment or

14

combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1(20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 158 (emphasis added). In the Eleventh Circuit, use of the language indicating consideration of an impairment, or combination of impairments, is a sufficient basis upon which to conclude that the ALJ considered the combined effect of Plaintiff's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (*per curiam*) (citing Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (*per curiam*). As the ALJ's opinion took into account Plaintiff's multiple impairments and stated that he considered whether those impairments – either individually or in combination – met or equaled the Listings, Plaintiff's argument on this point is without merit.

### D. Plaintiff's Subjective Complaints

The Court turns next to Plaintiff's argument that the ALJ did not adequately discredit her subjective complaints of pain and symptoms from her impairments, leading to an improper determination that she retained the RFC to perform medium exertional work and that there were jobs in the national economy that she could perform. Pl.'s Br., pp. 9, 11-13. Plaintiff generally disagrees with the ALJ's conclusion that her subjective complaints were not entirely credible, and she points to several pieces of evidence that she asserts are inconsistent with the ALJ's credibility determination. See id. at 11. The Commissioner argues that the ALJ's credibility determination and RFC finding are supported by substantial evidence and should be affirmed. Comm'r's Br., pp. 15-19. The Court resolves the matter as follows.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show:

15

(1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (per curiam).[7] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects that the Holt analysis was appropriately followed when reaching the conclusion that, although Plaintiff had medically determinable impairments that could reasonably be expected to produce the symptoms alleged

---

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

by Plaintiff, the alleged intensity, duration and limiting effects of those symptoms were not entirely credible. R. 157-160. The ALJ addressed each prong of the Holt analysis as described above, and the substantial evidence in the record supports his findings.

First, the ALJ found that Plaintiff had the following severe impairments: cervical spondylosis with left upper extremity radiculopathy, atrophy, and weakness; minor hand arthritis of the left DIP joints; and a history of substance abuse. R. 156. Moreover, the ALJ acknowledged Plaintiff allegations that she was unable to work due to depression, anxiety, ADHD, bipolar disorder, an inability to sit or stand more than five minutes due to swelling in her legs. R. 157. Having addressed the first prong of Holt, the ALJ went on to evaluate Plaintiff's allegations of the severity of her symptoms stemming from those impairments. The ALJ reviewed the medical evidence of record and found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. R. 157.

Plaintiff reported being unable to work due to rheumatoid arthritis, swelling in her legs, an inability to sit or stand for a long period, and pain in her neck, shoulder, and left hand. R. 249-50. But despite these physical impairments, the ALJ noted that in March and April of 2006, Plaintiff had denied any back pain, joint pain, muscle cramps, muscle weakness, and arthritis to Joseph A. Hooper, M.D. R. 158, 423. Further, the ALJ noted in October of 2006, records from the VA indicated that Plaintiff had only mild symptoms in her hands, was not currently taking medication for arthritis, and that her extremities had no edema, which contradicted her complaints of swelling in her legs and difficulty standing for extended periods. R. 158, 517. Moreover, he noted that in VA records from June of 2007, Plaintiff stated that

17

she was "doing great" and exercising with "Torso Track." R. 158, 494-95. In addition, the

ALJ noted that by March of 2008, Plaintiff reported generally good health with no pain, R.

158, 456, and by April of 2008, she was able to fly to Albania with her daughter for a vacation,

suggesting she did not have any difficulty sitting or standing for long periods, as she alleged.

R. 158, 533. Furthermore, the ALJ noted Plaintiff's testimony that she was taking classes

online, spent up to three hours on her computer every day, and read for school four to five

hours every other day, which further undermined her claims that she was unable to sit for long

periods. R. 159-60, 610-14.

Plaintiff argues, however, that Dr. Hooper was not her doctor; that contrary to the

ALJ's assertion, she has been taking medication for her arthritis for six years; and that she

traveled to Albania for a funeral, not a vacation, as the ALJ stated. Pl.'s Br., pp. 11-12.

Plaintiff's arguments are unavailing. First, even if Dr. Hooper were not Plaintiff's regular

doctor, the record nevertheless reflects that Plaintiff saw Dr. Hooper, who worked in the same

practice with Plaintiff's treating physician, Dr. Tomeo; during that visit, Plaintiff denied pain

or arthritic symptoms. R. 423. Second, Plaintiff's argument that she has been taking arthritis

medications for six years is based on new evidence not included in the record, and thus the

Court may not consider it in assessing whether the ALJ's decision is supported by substantial

evidence.[8] Ingram, 496 F.3d at 1267. Third, the reason that Plaintiff went to Albania is

irrelevant – what is relevant, as the ALJ noted, R. 158-59, is the fact that Plaintiff was able to

travel internationally, undermining her claim that she cannot sit or stand for more than minutes

---

[8]The Court notes, however, that even if it were able to assess the new evidence, this does not support Plaintiff's argument because she has simply provided a list of medications that she is *currently* taking, not medications she has taken over the past six years. Indeed, it is not clear to the Court that any of Plaintiff's current medications are actually prescribed for arthritis.

at a time. Moreover, as noted above, the ALJ pointed to numerous other pieces of evidence that undermined Plaintiff's credibility regarding the complaints associated with her physical impairments.

The Court acknowledges that Dr. Tomeo provided a written statement dated February 7, 2005, in which he indicated that Plaintiff was unable to work due to chronic illness, rheumatoid arthritis, and left cervical radiculopathy; Dr. Tomeo further indicated that these conditions would require six months of treatment before Plaintiff could return to work. R. 349-50. The ALJ discredited Dr. Tomeo's opinion as being "wildly disproportionate to the overall evidence of record, including his own treatment notes," R. 160, which are proper bases for discrediting the opinion of a treating physician. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (finding that a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence or is inconsistent with the physician's medical records). Moreover, even if Dr. Tomeo's opinion were credited, as the ALJ noted, Dr. Tomeo anticipated that Plaintiff could return to employment following six months of treatment, and later treatment notes indicated that Plaintiff's condition was resolved within this time period, as estimated. R. 160, 395.

Plaintiff also reported being unable to work due to ADHD, depression, anxiety, and bipolar disorder. R. 249. As set forth in detail, *supra*, the ALJ did not find Plaintiff's mental impairments to be severe – a determination that is supported by substantial evidence. In assessing Plaintiff's credibility regarding the alleged limiting effects of her mental impairments, the ALJ also found that her complaints were not entirely credible. R. 158. He noted that examinations throughout the time period under consideration consistently showed that Plaintiff's ADHD was well-controlled when she was compliant with her medication.

19

R. 158, 313-22, 423, 465, 533. Furthermore, the ALJ noted that Plaintiff had on numerous occasions reported sleeping and eating well, denied symptoms of anxiety or depression, exhibited a good mood with full affect, and had a global assessment of functioning ("GAF") score of 65, which "establishes that her mental capabilities are not significantly compromised, and can be described as mild, at best." R. 158, 160, 313-22, 423, 465, 501, 513.

Plaintiff argues that the ALJ's "entire decision" is based on old GAF scores and that, contrary to the ALJ's statements, she does not sleep well and has had to ask for increases in the dosage of her ADHD medication. Pl.'s Br., p. 12. These arguments are without merit. With regard to her argument about her GAF scores, as the Commissioner correctly points out, Comm'r's Br., p. 16, Plaintiff was again assessed with a GAF score of 65 as recently as January 28, 2009. R. 46. Furthermore, the ALJ did not base his determination solely on GAF scores as Plaintiff argues; instead, as explained above, he found that she had repeatedly denied symptoms of anxiety and depression, and had consistently exhibited a good mood with full affect. R. 158, 160, 313-22, 423, 465, 501, 513. Although Plaintiff argues that she does not sleep well, the ALJ pointed to numerous statements that Plaintiff made indicating that she was sleeping well. R. 158, 313-22, 465, 501. In addition, even if Plaintiff required increases in the dosage of her ADHD medication, this does not contradict the ALJ's finding that her ADHD was nevertheless well-controlled with medication. See Hall v. Astrue, No. 3:07-cv-1053-J-JRK, 2009 WL 890389, at *9 (M.D. Fla. Mar. 31, 2009) (affirming ALJ's determination that depression that was well-controlled with medication was not a severe impairment, despite the fact that dosage had been increased).

After considering Plaintiff's subjective complaints, the ALJ stated that although he had given Plaintiff "considerable benefit of the doubt," he found that she retained the RFC for

medium exertional work, "with restrictions against only occasionally crawling, occasionally handling or finger[ing], and frequent feeling." R. 159. In making this RFC finding, the ALJ observed that his assessment was consistent with findings of the State Agency physician, who opined that Plaintiff had the restrictions the ALJ noted, but otherwise could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for about 6 hours in an 8-hour workday, and could engage in unlimited pushing and pulling. R. 159, 369. The ALJ likewise noted that his RFC finding was consistent with that of the State Agency psychologist, who found Plaintiff's mental impairments to be non-severe and causing only mild functional limitations. R. 159, 336.

In sum, in satisfying the requirements of Holt, the ALJ sufficiently explained his reasons for discounting Plaintiff's credibility. The ALJ's credibility determination was based on the record as a whole, and he adequately articulated the basis for his determination in his written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding her complaints of pain and other symptoms under the Holt standard. He also had the opportunity to consider Plaintiff's description of her activities and to note incongruities between Plaintiff's subjective testimony and the objectively supported medical opinions in the record. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints after thoroughly evaluating the evidence in the record. Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562. Given the absence of credible support for the severity of Plaintiff's claims and the ALJ's clearly articulated reasons for discrediting the claims, Plaintiff's subjective complaints were properly discredited. Accordingly, the ALJ's RFC finding is supported by substantial evidence, and Plaintiff's

argument on this point fails.

### E.    VE Testimony

Finally, the Court turns to Plaintiff's argument that the ALJ used the VE improperly during the administrative hearing. Pl.'s Br., pp. 9, 12-13. Specifically, Plaintiff argues that the ALJ "tried to manipulate" the VE into finding that she could perform work that exists in substantial numbers in the national economy. Id. at 9, 12-13. The Commissioner argues that the hypothetical questions posed to the VE accurately reflect the ALJ's RFC findings, and thus Plaintiff's argument provides no basis for remand. Comm'r's Br., pp. 15-19.  The Commissioner has the better argument.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform her past relevant work but had the RFC to perform a range of medium work, as set forth in detail above. Because Plaintiff could no longer perform her past relevant work, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given her age, education, previous work experience, and RFC. In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines. The record reflects that the ALJ asked the VE the following:

> ... Mr. Crawford, we have in the exhibit file assessments made to Claimant's physical capacity, and actually a mental capacity.  Let me ask you a hypothetical, if I may, to draw on, on in both these areas.  With respect to the physical capacity of the Claimant . . . an assessment made June 6, 2005, by Carol Silver (Phonetic), a, what I would understand to be a physician for the state agency, concluded that the Claimant would be occasionally able to lift 50 pounds, frequently 25; stand and walk about six hours in an eight-hour workday; have an unlimited ability to push and pull; would occasionally be able to crawl; otherwise frequently to do other postural activities; and an unlimited ability to reach, reach in all directions but had occasional ability, only occasional ability to handle and finger, and frequent ability to feel. . . . . So I'm going to ask you to assume, Mr. Crawford, that the individual that though she has ADHD, is, is, (sic) does not have limitations that flow from

22

that. I understand what Counsel is saying with regard to the record evidence on that. But let me ask you then to, to focus then on the limitations that I've described on the physical side. . . .

R. 618-19. In response, the VE stated that Plaintiff could not perform her past work, but could work as a counter attendant, light and semi-skilled, SVP-3, with approximately 3,000 jobs in the state of Georgia and 105,000 jobs nationally; stock control clerk, light and semi-skilled, SVP-4, with approximately 2,800 jobs in Georgia and 98,000 nationwide; and security guard/house officer, light and semi-skilled, SVP-3, with approximately 3,000 jobs in Georgia and 140,000 jobs nationwide. R. 620. The ALJ further asked the VE to assume that Plaintiff was limited to unskilled work, with no transferrable skills. R. 621. The VE responded that Plaintiff would be able to work as a mail clerk, light and unskilled, with approximately 3,400 jobs in Georgia and 119,000 nationwide; and as an office helper, light and unskilled, with approximately 4,400 jobs in Georgia and 168,000 jobs nationwide. Id.

Plaintiff argues that the ALJ improperly attempted to sway the opinion of the VE by limiting the hypothetical questions to include only the physical limitations assessed in her RFC. Pl.'s Br., p. 9. Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (per curiam); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (per curiam); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe

23

a claimant's impairments and limitations is grounds for remanding case for further proceedings). Yet as explained in detail, *supra*, the ALJ's RFC determination was supported by substantial evidence, and his hypothetical to the VE reflected the limitations as assessed in that RFC. Indeed, the ALJ took his initial hypothetical one step further by asking the VE to provide examples of unskilled work that Plaintiff could perform. Accordingly, the Court finds that the ALJ's hypothetical more than adequately accounted for Plaintiff's physical and mental characteristics and should therefore not be disturbed.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this *10th* day of February, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE